IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARY GREEN<br>for RICKY C. GREEN (Deceased),<br><br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>    Defendant. | No. 2:05cv0081<br>Judge Thomas Wiseman<br>Magistrate Judge Knowles |

## MEMORANDUM OPINION

This case was referred to United States Magistrate Judge E. Clifton Knowles pursuant to 28 U.S.C. § 636(b)(1)(B). Thereafter, Plaintiff Mary Green, by and for her deceased husband Ricky C. Green, filed a motion for Judgment on the Administrative Record seeking entry of judgment in favor of Mr. Green on the grounds that the Administrative Law Judge's determination was not supported by substantial evidence. (Doc. No. 13.) The Commissioner of Social Security ("Commissioner" or "Defendant") filed a response opposing Plaintiff's motion. (Doc. No. 20.) Magistrate Judge Knowles filed a Report and Recommendation ("R&R") (Doc. No. 21) recommending that the Plaintiff's motion be denied and that the decision of the Commissioner be affirmed. Plaintiff has filed a timely objection to the Magistrate Judge's R&R. (Doc. No. 22.)

Plaintiff objects to the Magistrate Judge's R&R on the grounds that the Administrative Law Judge ("ALJ") erred both in discounting the opinion of claimant Ricky Green's treating physician and in his consideration of Plaintiff's own testimony as claimant's wife. Plaintiff asserts generally that as a result of these errors, Defendant's decision is not supported by substantial evidence. Defendant Commissioner filed no response to Plaintiff's objections.

The Court has reviewed *de novo* the entire record and the pleadings, with particular attention to those portions of the record that are relevant to Plaintiff's objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). For the reasons set forth herein, the Court will adopt in part and reject in part Magistrate Judge Knowles' R&R. Specifically, the R&R is adopted in so far as it pertains to Plaintiff's second objection, namely that the ALJ did not err in his consideration of Plaintiff's testimony as the claimant's wife. (Doc. 21, at 33–35.) However, for the reasons stated herein, the Court also finds that Plaintiff's objection relating to the ALJ's

explanation of his rationale for giving more weight to a non-treating physician's opinion over that of Mr. Green's treating physician is meritorious. Accordingly, the Court will grant Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 12). The Commissioner's decision denying benefits will be reversed and this matter remanded for further consideration consistent with this opinion.

## I. INTRODUCTION

### A. Procedural History

Claimant Ricky Green filed his current application for disability insurance benefits ("DIB") on September 13, 2001, alleging disability due to diabetes and a left foot wound. ((Doc. No. 9, Administrative Record ("AR") 55–57, 71–72.) The application was denied at the initial review and following reconsideration of the administrative decision. Mr. Green requested and received a *de novo* hearing before an ALJ on April 15, 2003. (AR 486–507.) On October 8, 2003, the ALJ issued a written decision stating that Mr. Green was not disabled under Title II of the Social Security Act (the "Act") during the period June 4, 1998 to December 31, 1998, but was disabled under Title XVI of the Act for the period September 12, 2001 to December 24, 2002. (AR 17–21.) Specifically, the ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on June 4, 1998, his amended alleged disability onset date, and continued to meet them through December 31, 1998.

2. The claimant has not engaged in substantial gainful activity since June 4, 1998.

3. From June 4, 1998 to December 31, 1998, the claimant's "severe" impairment was type 2 diabetes mellitus with associated peripheral neuropathy. During that period, he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1 to Subpart P of Regulations No. 4.

4. The claimant's death prior to the hearing precludes a creditability [sic] finding.

5. From June 4, 1998 to December 31, 1998, the claimant could have performed [work at the light level of exertion, with allowance for some limitations].

6. From June 4, 1998 to December 31, 1998, the claimant could not have performed his past relevant work as a sheet metal fabricator and a tool and die maker.

7. With a high school education, the claimant was 46 years old, which is defined as a younger individual, when he died.

8. From June 4, 1998 to December 31, 1998, transferability of skills was immaterial.

9. Considering his residual functional capacity and vocational factors and using either

    Rule 202.21 or 202.22 as a framework for decisionmaking from June 4, 1998 to December 31, 1998, a significant number of jobs that the claimant could have performed existed in the regional economy. . . . Table 2 of Appendix 2 to Subpart P of Regulations no. 4; 20 CFR §404.1569.

10. From September 12, 2001 to December 24, 2002, the claimant's impairments also included chronic osteomyelitis and a severe Charcot arthropathy of the left foot[, which] was eventually amputated below the knee.

11. From September 12, 2001 to December 24, 2002, the claimant's impairments met the requirements of an impairment listed in Appendix 1 to Subpart P of Regulations No. 4.

12. From June 4, 1998 to December 31, 1998, the claimant was not disabled under the Title II of the Social Security Act, but he was disabled under Title XVI of the Act from September 12, 2001 to December 24, 2002.

13. The claimant died on December 24, 2002.

(AR 20–21; *see also* AR 19.) On July 7, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 5–8), thereby rendering that decision the final decision of the Commissioner.

This civil action was thereafter timely filed and the Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case was referred to United States Magistrate Judge Knowles for consideration. Thereafter, Plaintiff filed a Motion for Judgment on the Administrative Record (Doc. No. 13), seeking reversal of the Commissioner's decision denying benefits from June 4, 1998 to December 31, 1998. The Commissioner filed a Response to Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 20) requesting that the Commissioner's decision be affirmed.

Magistrate Judge Knowles filed a thorough and thoughtful R&R on September 7, 2006, recommending that Plaintiff's motion be denied and the findings of the Commissioner be affirmed. (Doc. No. 21.) In response to Plaintiff's two objections, the same objections made on appeal, Magistrate Judge Knowles found that (1) despite the ALJ's misreading of Mr. Green's treating physician's evaluation, "[b]ecause the record contains contradictory evidence and the ALJ articulated his reasons for discounting Dr. Bertram's assessments, the Regulations do not mandate that the ALJ accord Dr. Bertram's evaluations controlling weight"; and (2) "Plaintiff has failed to proffer any evidence showing that the ALJ disregarded" Plaintiff Mary Green's testimony and "the record in the case is replete with doctors' evaluations, medical assessments, and test results . . . all of which were properly considered by the ALJ, and all of which constitute "substantial

evidence." (Doc. No. 21, at 32–34.)

Plaintiff timely filed objections to the R&R issued by Magistrate Judge Knowles. (Doc. No. 22.) The matter is now before this Court.

### B. Factual Background

The facts of this case are fully detailed in the R&R submitted by Magistrate Judge Knowles. Plaintiff challenges only the ALJ's decision to deny her deceased husband DIB for the period from June 4, 1998, through December 31, 1998, and thus the facts outlined below will focus on this period.

Briefly, Mr. Green filed for DIB on June 4, 1998, for disability due to adult-onset diabetes and a persistent left foot wound. (AR 71–72.) The ALJ found, and Plaintiff has not contested, that Mr. Green was eligible for disability insured status under Title II of the Social Security Act (SSA) until December 31 of the same year.

Due to Mr. Green's myriad ailments, the record contains extensive documentation from the many physicians who treated him. In particular, Mr. Green was treated by Dr. Katherine Bertram from 1995 until his death in 2002. During this period, Dr. Bertram treated Mr. Green for multiple insect bites, a foot injury, diabetes and diabetes-related ailments, a groin abscess and Charcot's disease, among other ailments. Dr. Bertram also provided Mr. Green with amputation-related consultations.

Dr. Bertram completed two separate Medical Source Statements of Ability To Do Work-Related Activities (ATDW) in late 2002. Each of these reports asked for Dr. Bertram's evaluation of Mr. Green's limitations as of June 4, 1998. Dr. Bertram completed her first report on August 21, 2002. (AR 371–73.) Dr. Bertram's statements in the first report, however, indicate that she erroneously considered Mr. Green's condition during a later time period. For instance, she stated that Mr. Green was permanently disabled from working due to a below-the-knee amputation (BKA) of his left leg, which did not occur until nearly four years after the alleged onset date of June 1998. However, Dr. Bertram completed another copy of the same form on September 23, 2002 (AR 368–70), in which she made no mention of the BKA but indicated instead that Mr. Green had a "diabetic foot ulcer necessitating patient to be off foot as much as possible." (AR 369.) This second report also assessed Mr. Green as having less severe environmental limitations and fewer

manipulative limitations than the first report. (*See* AR 369–70.) In other words, there were substantial differences between the first and second reports, and there is no indication that the second report did not pertain to the correct time period, that is, June through December 1998.

Dr. Frederic Cowden completed two Physical Residual Functional Capacity Assessments (RFC) on July 31, 2002. (AR 335–47.) Dr. Cowden's reports evaluated Mr. Green's limitations from June 2001 through March 2002 and from April 2002 projected to April 2003. Although Dr. Cowden's reports reached several conclusions about Mr. Green's exertional and postural limitations during the referenced time frame, Dr. Cowden ultimately concluded that "[t]here is insufficient MER in file to evaluate his impairments prior to DLI of 12/98." (AR 347.)

Mr. Green was also evaluated by Dr. James D. McKinney, who completed an ATDW on August 27, 2002. (AR 349–51.) Dr. McKinney's ATDW evaluated Mr. Green's condition at the time of the report (i.e. August, 2002), and included the limitations due to Mr. Green's BKA.

Finally, Dr. Edwin Bransome completed an ATDW on December 26, 2002, regarding Mr. Green's limitations from June 1998 to December 1998. (AR 473–79.) Compared with Dr. Bertram's report, Dr. Bransome's evaluation indicated that Mr. Green, during that period, could lift fifty pounds (versus twenty), was not limited in his ability to sit, had fewer postural limitations and no environmental limitations.

Mr. Green died of cardiac arrest on December 24, 2002, and his wife, Mary Green, became the substitute claimant thereafter, and is the plaintiff here.

**II.      STANDARD OF REVIEW**

The Court's standard of review of a Magistrate Judge's Report and Recommendation depends upon whether a party files objections. Here, where Plaintiff has objected to portions of the Report and Recommendation, the Court reviews those portions *de novo*. Lyons v. Comm'r of Soc. Sec., 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004).

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). This Court,

therefore, is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. Abbott v. Sullivan, 905 F.2d 918, 922 (6th Cir. 1990). If substantial evidence supports the ALJ's conclusion, this Court cannot reverse the ALJ's decision even if substantial evidence exists in the record that would have supported an opposite conclusion. See Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantiality is based upon the record taken as a whole. Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 366 (6th Cir. 1984).

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S R&R

Plaintiff argues that the ALJ failed properly to apply the treating-source rule. Specifically, Plaintiff contends that the opinion of Mr. Green's treating physician, Dr. Bertram, for the period from June through December 1998 was erroneously disregarded. Plaintiff further contends that her own testimony at Mr. Green's hearing was erroneously given too little weight.

#### A. Plaintiff's Objection to the Weight Given Mr. Green's Treating Physician's Opinion

Plaintiff argues that the ALJ's decision to disregard Mr. Green's treating physician's opinion for the relevant period was based solely upon a mistaken reading of the physician's report. (Doc. 22, at 1-2.) Defendant does not dispute this contention. (Doc. 20, at 13.) Plaintiff contends that the ALJ's mistaken reading led to the ALJ's erroneous denial of DIB to Mr. Green.

As explained by the Sixth Circuit in Wilson v. Comm'r of Social Sec., 378 F.3d 541, 544 (6th Cir. 2004), the so-called "treating source rule" generally requires the ALJ reviewing a claimant's application for benefits to accord more weight to opinions from the claimant's treating sources than to those opinions offered by non-treating sources. Moreover, "[a]n ALJ must give the opinion of a treating source *controlling weight* if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" Id. (citing 20 C.F.R. § 404.1527(d)(2) (2004)) (emphasis added); see also Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir. 2002) ("Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of

treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.' ") (quoting Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985)).

In rejecting a treating source's opinion, the ALJ is required to "give good reasons in [the] notice of determination or decision for the weight [accorded a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2). In Wilson, the Sixth Circuit held that the ALJ's disregard of the claimant's treating physician's opinion was reversible error because the ALJ's "bald statement" that the treating physician's opinion "may be an accurate assessment of [the claimant's] current limitations" was insufficient to demonstrate "good reasons" for disregarding the opinion. Wilson, 378 F.3d at 545. The court held that the provision of "good reasons" is a substantial procedural right granted to each DIB claimant. Id. at 546–47. The deprivation of this right, as long as it is not *de minimis*, is reversible error. Id.[1] This is so even if the record may otherwise support the ALJ's determination. Id. Further, the Wilson court held that even if the ALJ had misread the physician's opinion, it would still be reversible error. Id.

Here, Plaintiff is correct that the ALJ mistakenly asserted that the evaluations of Dr. Bertram, Mr. Green's treating physician, were not for the relevant period in 1998. The ALJ stated that Dr. Bertram's opinions regarding Mr. Green's ability to do work "did not actually become valid until well *after* December 31, 1998 . . . [O]ne of Dr. Bertram's bases for her assessment was for a BKA that took place *nearly four years after* his alleged disability onset date, which was the date on which she was asked to assess the claimant's capabilities. . . . Thus, Dr. Bransome's assessment receives by far the most weight for the period from June 4, 1998 to December 31, 1998." (AR 19.) The ALJ apparently disregarded Dr. Bertram's second Medical Source Statement, in which Dr. Bertram appeared to have recognized her mistake in the August, 2002 report.

---

[1] The Sixth Circuit, in Wilson, held that:
"an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." . . . [A] regulation bestows a "substantial right" on parties before the agency, and "it is incumbent upon agencies to follow their own procedures . . . even where the internal procedures are possibly more rigorous than otherwise would be required." . . . Section 1527(d)(2) [is a "substantive right"], creating an important procedural safeguard for claimants for disability benefits. That is not to say that a violation of the procedural requirement of § 1527(d)(2) could never constitute harmless error. We do not decide the question of whether a de minimis violation may qualify as harmless error.
378 F.3d at 546-47 (emphasis in original; internal citations omitted).

As indicated above, this second report makes no mention of Mr. Green's BKA and appears to be based entirely upon Mr. Green's ailments in 1998. Defendant does not dispute that the ALJ made this mistake. (Doc. 20, at 13.)

The ALJ relied solely upon this mistaken view of Dr. Bertram's opinion in disregarding her opinion in favor of Dr. Bransome's conflicting assessment. The ALJ thus violated the requirement in § 404.1527(d)(2) that he provide "good reason" for his decision to disregard the treating physician's assessment. This Court therefore finds merit in Plaintiff's objection on this ground.

### B. Plaintiff's Objection to the ALJ's Consideration of Her Testimony

Plaintiff argues that the ALJ did not adequately consider her testimony as the claimant's wife. Specifically, Plaintiff contends that the ALJ's only reference to her testimony was an incorrect conclusion that her only testimony regarding the relevant period was a statement that Mr. Green saw Dr. Bernard in June 1998. Plaintiff argues that the ALJ did not provide evidence that he "considered the functional limitations described by Ms. Green with respect to the relevant time period." (Doc 22, at 3.)

The regulations do not require that an ALJ provide "good reasons" for the weight (or lack thereof) given a non-treating source opinion, including the lay testimony of a claimant's spouse. Nor is there a requirement that such testimony be given any particular weight. Thus, the ALJ need only consider the opinion as part of the record before him. 20 C.F.R. § 404.1527(c). Here, the ALJ acknowledged that, "[a]t the hearing, Mrs. Green testified about the claimant [*sic*] vocational and medical histories." (AR 19.) This statement indicates that the ALJ, at a minimum, considered Ms. Green's testimony. Plaintiff's second objection will therefore be overruled.

### IV. CONCLUSION

The Court has reviewed *de novo* the entire record and the pleadings, including those portions of the R&R to which Plaintiff objects. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court finds that the ALJ accorded adequate weight to Plaintiff's own testimony as part of the record as a whole, but that the ALJ did not adequately explain his failure to accord controlling weight to Mr. Green's treating physician's opinion. Accordingly, the Court adopts the Magistrate's R&R in part, insofar as it pertains to the ALJ's treatment of

Plaintiff's testimony, and rejects it in part, as it relates to the ALJ's consideration of Mr. Green's treating physician's opinion. The ALJ's decision will be reversed and the matter remanded for further consideration consistent with this opinion.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge